United States District Court
District of Massachusetts

```
─────────────────────────────────
                                  )
Raymond P MacCausland,            )
Individually and on Behalf of     )
All Persons Similarly Situated,   )
                                  )
          Plaintiff,              )     Civil Action No.
                                  )     17-10253-NMG
     v.                           )
                                  )
Uber Technologies, Inc. and       )
Rasier, LLC,                      )
                                  )
          Defendants.             )
─────────────────────────────────
```

MEMORANDUM & ORDER

GORTON, J.

This is a putative class action brought by Raymond MacCausland ("MacCausland" or "plaintiff") on behalf of taxi drivers in the Greater Boston area. Plaintiff alleges that Uber Technologies, Inc. and its wholly-owned subsidiary, Raiser, LLC ("Uber" or "defendant") competed unlawfully in the on-demand, ride-hail ground transportation market in and around Boston, Massachusetts. Plaintiff alleges that Uber competed unfairly and deceptively in violation of the common law and of the Massachusetts Consumer Protection Act, that Uber violated state and federal antitrust law and that Uber engaged in a civil conspiracy and aided and abetted unfair competition.

-1-

Before the Court is defendant's motion to dismiss
plaintiff's antitrust claims.

## I. Background

Uber entered the Boston market for private transportation
services in 2011 and launched its UberX service in 2013.  The
company provides a digital tool for potential riders to request
private vehicles-for-hire by using Uber's free "smart phone
application" ("the Uber app"). Users who open the Uber app on
their mobile phones are shown a map of their location or a
nearby designated pick-up point and the available Uber-
affiliated vehicles in that vicinity.

According to MacCausland, the City of Boston has issued
approximately 1,825 taxi licenses, referred to as taxi
medallions, subject to a strict and extensive city regulatory
regime.  In contrast, there are over 20,000 cars-for-hire that
currently provide Uber's ride-hailing service in the Boston
area.

In February, 2017, MacCausland, a Boston taxi driver, filed
this complaint against Uber.  At the same time, taxi medallion
holders sued Uber under the same legal theories that plaintiff
alleges here.  That related action involves seven different
groups of plaintiffs who represent over 800 plaintiff taxi
companies in the Greater Boston area.  Originally, seven

-2-

separate complaints were filed in this district between
December, 2016, and April, 2017.  The Court consolidated the
cases pursuant to Fed. R. Civ. P. 42(a)(2) in October, 2017.

In December, 2017, this session ruled on Uber's motion to
dismiss the consolidated action. See Malden Transportation, Inc.
v. Uber Techs., Inc., 286 F. Supp. 3d 264 (D. Mass. 2017).  The
Court held that the so-called Malden plaintiffs stated a claim
for unfair competition under the common law and M.G.L. c. 93A
and that plaintiffs stated a claim for aiding and abetting
unfair competition and civil conspiracy to commit unfair
competition.  The Court allowed defendants' motion to dismiss
claims against two of Uber's founders for want of personal
jurisdiction.  It also allowed Uber's motion to dismiss with
respect to plaintiffs' antitrust claims, tortious interference
claims and failed theories of civil conspiracy. See generally
id.

After the issuance of that memorandum and order, plaintiffs
in the Malden cases as well as the plaintiff in this case
(MacCausland) amended their complaints.  MacCausland's second
amended complaint mimics the amended complaints in Malden.  He
asserts counts of unfair and deceptive trade practices under the
common law and Massachusetts Consumer Protection Act, as well as
aiding and abetting and unfair competition.  He has also added

-3-

factual allegations to his complaint which bear upon his claims of violation of state and federal antitrust law.  In May, 2018, the parties in this case filed a stipulation of dismissal against the individual defendants.

Before the Court is Uber's motion to dismiss MacCausland's antitrust claims.

## II. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F.Supp.2d at 208.

-4-

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009).  Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. <u>Id.</u> Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Id.</u> at 679.

## III. Analysis

MacCausland asserts claims for attempt to monopolize in violation of the Sherman Antitrust Act, 15 U.S.C. § 2, and the Massachusetts Antitrust Act, M.G.L. c. 93 § 5.[1]

Plaintiff alleges that Uber has attempted to drive taxi companies out of business by using its predatorily-priced UberX service.  Defendant responds that plaintiff has not met the high burden of alleging a predatory pricing claim and has not alleged an injury to competition.

Section 2 of the Sherman Act makes it illegal to

monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations.

15 U.S.C. § 2.

---

[1] Neither party contends that the legal standard varies for the state law claim.

To state a monopolization claim under § 2, a plaintiff must adequately allege that defendant (1) has monopoly power in the relevant market and (2) has engaged in illicit "exclusionary practices" with "the design or effect of protecting or enhancing its monopoly position." Sterling Merch., Inc. v. Nestle, S.A., 656 F.3d 112, 125 (1st Cir. 2011) (quoting Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st Cir. 1996) (internal citation omitted)).

One kind of exclusionary practice is the practice of "predatory pricing".  In such a scheme, a company reduces the price of its product to below cost, intending to drive competitors out of business so that it can then raise prices after it has achieved a monopoly position. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 584-585, n. 8 (1986).  To succeed on a predatory pricing claim a plaintiff must demonstrate that

> the prices complained of are below an appropriate measure
> of its rival's costs . . . [and that the competitor had] a
> dangerous probability of recouping its investment in below-
> cost prices.

Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222, 224 (U.S. 1993).

Because an economically unsound approach by a competitor could actually benefit consumers, plaintiffs must explain with particularity "just what the arrangements were and why they

plausibly constituted antitrust violations." See Am. Steel
Erectors v. Local Union No. 7, Int'l Ass'n of Bridge,
Structural, Ornamental & Reinforcing Iron Workers, 815 F.3d 43,
71 (1st Cir. 2016) (quoting Stop & Shop Supermarket Co. v. Blue
Cross & Blue Shield of R.I., 373 F.3d 57, 65 (1st Cir. 2004)).

    MacCausland here fails to allege facts supporting a
predatory pricing claim.  His new allegations do not cure the
deficiencies that doomed the Malden plaintiffs. See Malden, 286
F. Supp. 3d at 279-280.

    Plaintiff does not allege that Uber's services were priced
below Uber's costs.  He has failed to "explain in detail" why
Uber's conduct constituted an antitrust violation. See Am.
Steel, 815 F.3d at 71.  His second amended complaint alleges
that Uber "deflated the UberX fares to below cost in order to
drive out the taxi drivers" but such "threadbare recitals of a
cause of action's elements, supported by mere conclusory
statements, do not suffice" to survive a motion to dismiss.
Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

    Basic facts such as what an average or median "ride" in the
Boston area costs Uber, or costs a taxi, are absent.
MacCausland attempts to bolster the factual allegations found
lacking in Malden by attaching a report from the Wall Street
Journal showing that, worldwide, Uber's costs exceed its

revenue.  Uber's global performance does not, however,
constitute a relevant allegation as to Uber's costs in the
"ride-hailing market in the City of Boston."   Furthermore,
although plaintiff correctly notes that "Uber is a privately-
held company that [does] not disclose relevant financial and
market information," that fact does not absolve plaintiff from
meeting the required pleading standard.

In a similar vein, MacCausland fails to allege facts
demonstrating Uber's intent to monopolize.  A plaintiff alleging
an attempt to monopolize must establish "specific intent" to
destroy competition. Home Placement Serv., Inc. v. Providence
Journal Co., 682 F.2d 274, 281 (1st Cir. 1982) (citing Times-
Picayune Pub. Co. v. United States, 345 U.S. 594, 626 (1953)).
MacCausland generally asserts that Uber

> engaged in a scheme to intentionally undercut the taxi
> industry [and that Uber was] intent on destroying any and
> all competition through drastic anti-competitive pricing.

He also refers to specific statements, such as an Uber
advertisement proclaiming "These fares may only last a limited
time, but the more you ride, the more likely they will last."
Finally, plaintiff cites a handful of unremarkable statements by
Uber's former CEO made in entrepreneurial business-speak such as
"I try to push the limits.  Pedal to the metal."  No specific
facts in the second amended complaint even suggest that Uber

-8-

intended to obtain a monopoly in the Boston ride-hailing market. Without an unlawful intent, "increasing sales and increasing market share are normal business goals," not verboten practices. U.S. Steel Corp. v. Fortner Enterprises, Inc., 429 U.S. 610, 612 n.1 (1977).

Equally important, plaintiff fails to show an injury to Boston consumers.  That omission is dispositive, because antitrust plaintiffs must show that "defendants' actions caused an injury to competition, as distinguished from impact on themselves." R.W. Int'l Corp. v. Welch Food, Inc., 13 F.3d 478, 487 (1st Cir. 1994).  According to plaintiff's complaint, Uber's entry caused the supply in the ride-hailing market to increase and the price to diminish.  Such allegations fail to demonstrate an injury to competition. See Sullivan v. Nat'l Football League, 34 F.3d 1091, 1096 (1st Cir. 1994), as amended on denial of reh'g (Oct. 26, 1994) ("Anticompetitive effects, more commonly referred to as injury to competition or harm to the competitive process, are usually measured by a reduction in output and an increase in prices in the relevant market.") (internal quotation marks omitted) (citation omitted).  A decrease in the value of Boston taxi medallions is superfluous.

Finally, this Court finds the analysis in Philadelphia Taxi Ass'n, Inc. v. Uber Techs., Inc., 886 F.3d 332 (3d Cir. 2018),

applicable and persuasive.  In that case, Philadelphia taxicab
drivers and taxicab companies alleged that Uber's entry into the
Philadelphia taxicab market violated the Sherman Act. Id. at
336.  Just as plaintiff does here, the Philadelphia plaintiffs
argued that Uber's actions were

> illegal, predatory and led to a sharp drop in the value of
> taxicab medallions as well as a loss of profits.

Id.

The Third Circuit Court of Appeals ("Third Circuit")
affirmed the district court's dismissal of plaintiffs'
complaint, holding that the plaintiffs had failed 1) to state a
claim for attempted monopolization and 2) to allege a legally
cognizable antitrust injury. Id.  The facts in the Philadelphia
Taxi case are strikingly similar to those in this case and there
the Third Circuit:

> 1) reasoned that Uber "bolstered competition, . . .
> operate[d] at a lower cost [and attracted taxi drivers]
> due to its cost efficiency and competitive advantage,"
> but that such conduct does not constitute
> anticompetitive conduct violative of antitrust law, id.
> at 340-41;

> 2) found that plaintiffs failed to allege specific intent
> to monopolize which was insufficient given that Uber's
> strategy could "be reasonably viewed as predominantly
> motivated by legitimate business aims, id. at 341
> (internal quotation marks omitted) (quoting Times
> Picayune Publ'g Co. v. United States, 345 U.S. 594, 627
> (1953)); and

3) observed that plaintiffs had failed to allege antitrust
standing because "harm to [plaintiffs'] business does
not equal harm to competition." Id. at 344.

MacCausland's complaint and legal theories are substantially

indistinguishable from those dismissed in Philadelphia Taxi and

this Court sees no reason to diverge from the well-reasoned

opinion in that case.

### ORDER

For the foregoing reasons, defendants' partial motion to

dismiss the antitrust claims in the second amended complaint

(Docket No. 64) is **ALLOWED.**


**So ordered.**

                                /s/ Nathaniel M. Gorton_____
                                Nathaniel M. Gorton
                                United States District Judge


Dated May 30, 2017